IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

LORENZO CATALAN ROMAN,

Petitioner

v.

UNITED STATES OF AMERICA,
Respondent

CIVIL 11-1212 (PG)
(CRIMINAL 02-117 (PG))

MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

A. FACTUAL AND PROCEDURAL BACKGROUND

On November 30, 2011, three gun-toting assailants snatched a bag containing $180,000 from a driver employed by Ranger American Armored Services, as he walked from an armored car to the Saulo D. Rodriguez Credit Union in Gurabo, Puerto Rico.   On March 6, 2002, several men attempted to rob two Ranger American guards, one of them the armored vehicle driver of the November 30, 2011 incident.  As he approached the door of the Valenciano Credit Union in Juncos, Puerto Rico, a nearby suspect brandished a weapon, as did the guards.  Hasty escapes were made by the culprits.  In yet another incident, an armed carjacking occurred on March 26, 2002 and a green Ford Explorer was stolen by two assailants.  The following day, the same Ranger American guards of March 6, 2002 were assigned to deliver $100,000 to the Saulo D. Rodriguez Credit Union. Another armed robbery resulted in an exchange of over 30 shots

CIVIL 11-1212 (PG)                           2
(CRIMINAL 02-117 (PG))

and in the heinous execution-style murder of one guard by Lorenzo Catalan-Roman, himself wounded.[1]  Petitioner was arrested at the scene, murder pistol in hand.[2]  The stolen green Ford Explorer became the getaway car for another assailant.  When the Ford Explorer was stolen a Glock 9mm pistol was in the glove compartment. On March 27, a Glock 9mm pistol was used by the first assailant.

On April 3, 2002, a grand jury sitting in Puerto Rico returned an indictment charging petitioner Lorenzo Catalan-Roman and two others, in that on or about March 27, 2002, in the District of Puerto Rico and within the jurisdiction of this court, petitioner and the co-defendants, aiding and abetting each other, did knowingly, willfully, intentionally and unlawfully obstruct, delay, and affect, commerce as that term is defined in Title 18, United States Code, Section 1951(b)(3), and the movement of articles and commodities in such commerce, by robbery, as that term is defined in Title 18 United States Code, Section 1951(b)(1), by unlawfully taking or obtaining property consisting of money, that is, approximately One Hundred Thousand Dollars ($100,000), in the custody or possession of Ranger American Armored Services Co., from the person of or in the presence of Ranger American security guards, against their will by means of

_____

[1](Criminal No. 02-117 (PG), Opinion and Order, May 19, 2005, Docket No. 506 at 2). United States v. Roman, 371 F. Supp. 2d 36, 40  (D.P.R. 2005).

[2]United States v. Catalan-Roman, 585 F.3d 453, 457-58 (1st Cir. 2009).

CIVIL 11-1212 (PG)                          3
(CRIMINAL 02-117 (PG))

actual and threatened force, or violence, that is, at gun point and by shooting towards the security guards and causing the death of Gilberto Rodriguez-Cabrera. All in violation of Title 18, United States Code, Sections 1951(a) and 2.  (Criminal No. 02-117 (PG), Docket No. 10).  Count Two charged petitioner and the other two defendants in that on or about March 27, 2002, in the District of Puerto Rico and within the jurisdiction of this court, petitioner and the co-defendants, and other persons unknown to the grand jury, aiding and abetting each other, knowingly carried and used firearms, as that term is used in Title 18, United States Code, Section 921(a)(3), during and in relation to a crime of violence as that term is defined in Title 18, United States Code, Section 924(c)(3), for which they may be prosecuted in a court of the United States, that is interference with commerce by robbery in violation of Title 18, United States Code, Section 1951(a) and as set forth in Count One of this Indictment, which is realleged and incorporated by reference herein, and in the course of that crime, unlawfully killed Gilberto Rodriguez-Cabrera with malice aforethought through the use of a firearm, which is murder, as defined in Title 18, United States Code, Section 1111, by knowingly, willfully, deliberately, maliciously, and with premeditation shooting Gilberto Rodriguez-Cabrera with a firearm, thus causing his death.  All in violation of Title 18, United States Code, Section 924(j) and 2.  Count Three charged petitioner and the other two defendants in that on or about March 27, 2002, in

CIVIL 11-1212 (PG)                                    4
(CRIMINAL 02-117 (PG))


the District of Puerto Rico and within the jurisdiction of this court, petitioner and

the co-defendants, and others unknown to the grand jury, aiding and abetting

each other,  knowingly brandished, discharged, used and carried firearms, as that

term is defined in Title 18, United States Code, Section 921(a)(3), during and in

relation to a crime of violence as that terms is defined in Title 18, United States

Code, Section 924(c)(3), that is: interference with commerce by robbery, an

offense for which they may be prosecuted in a court of the United States as a

violation of Title 18, United States Code, 1951(a), all in violation of Title 18,

United States Code, Section 924(c)(1)(A)(iii) and 2.

        A superceding indictment was returned on June 26, 2002. (Criminal No. 02-

117 (PG), Docket No. 32).  Petitioner was similarly charged in five of seven counts

with violations of Title 18 United States Code Sections 2, 924(j), and 924

(c)(1)(A)(iii).  Added to the indictment was the first armed robbery of Ranger

American occurring on November 30, 2001.  A second superceding indictment was

returned on March 14, 2003.  (Criminal No. 02-117 (PG), Docket No. 85). Two

additional defendants were added.  Petitioner was charged in five of ten counts,

Counts 1, 2, 7, 8, 9.  The charges were conspiracy which incorporated all of the

remaining counts, a weapons count, carjacking, aiding and abetting in armed

robbery and murder during the armed robbery.   The United States filed a Notice

CIVIL 11-1212 (PG)                          5
(CRIMINAL 02-117 (PG))


of Intent to Seek a Sentence of Death on July 31, 2003.  (Criminal No. 02-117 (PG), Docket Nos. 149, 150).

### B. TRIAL

On January 24, 2005,  the jury selection process commenced against petitioner and another defendant.  The court had determined that the death eligible defendants would be severed from the other defendants and tried first. Petitioner was represented by court-appointed Gustavo Del Toro, Esq. and Steve Potolsky, Esq., who was appointed learned counsel  The jury was selected by February 24, 2005 and trial commenced on March 7, 2005.  After ten days of trial, petitioner was convicted as charged.  (Criminal No. 02-117 (PG), Docket No. 389).  Petitioner having previously been certified as eligible for the death penalty, the first day of the penalty phase was April 12, 2005.  (Criminal No. 02-117 (PG), Docket No. 434).  On the eight day of jury trial, penalty phase, the jury returned a verdict.  (Criminal No. 02-117 (PG), Docket No. 477).  The jury having rejected the death penalty, petitioner was sentenced to life imprisonment on December 19, 2005 as to Count Eight of the Second Superceding Indictment.  He received 20 and 30-year sentences on other counts (Criminal No. 02-117 (PG), Docket Nos. 496, 591, 592).  Except for two counts containing double jeopardy infirmities, petitioner's conviction was affirmed on October 23, 2009.  United States v. Catalan-Roman, 585  F.3d 453  (1st Cir. 2009).

CIVIL 11-1212 (PG)                                6
(CRIMINAL 02-117 (PG))

## C. APPEAL

Petitioner argued it was error for the court to prevent his introducing extrinsic evidence to impeach a key witness, to deny his motion to sever his trial from that of the co-defendant, and to quash a subpoena of Ranger American tax records.   He also challenged convictions on three counts based on double jeopardy grounds.  United States v. Catalan-Roman, 585  F.3d at 456.

The court reviewed the district court's denial of petitioner's motion for severance, and noted that the denial was based on petitioner's having failed to make a detailed proffer for the court to be able to evaluate the expected exculpatory testimony of a co-defendant[3].  United States v. Catalan-Roman, 585 F.3d at 461-62.  The court also reviewed the district court's determination to disallow extrinsic evidence in the form of five FBI agents who would have impeached a key witness's accounts of the robberies and murder.  Indulging in a Confrontation Clause analysis, the court found petitioner's argument conclusory. Id.  at 465.  Entertaining a Due Process focus, the reviewing court determined that the district court committed error in evidentiary rulings as to the five proffered witnesses but that such error was harmless beyond a reasonable doubt.

---

[3]See Criminal No. 02-117 (PG), Opinion and Order, June 7, 2005,  Docket No. 522 at 2, n.1. United States v. Catalan-Roman, 376 F. Supp. 2d 96,  98 (D.P.R. 2005).

CIVIL 11-1212 (PG)                    7
(CRIMINAL 02-117 (PG))

Id. at 471.[4]  Petitioner raised and prevailed on grounds of double jeopardy.  Two

counts were determined to be the culprits and the government conceded the

point.  Id. at 471-72.  The convictions on the non-offending counts were affirmed.

A petition for rehearing en banc was filed, and denied on December 23, 2009.

### D. COLLATERAL REVIEW

This matter is before the court on timely motion to vacate, set aside or

remand sentence filed by petitioner Lorenzo Catalan-Roman on February 24,

2011. (Docket No. 1).  Petitioner argues that had he known he was facing a life

sentence, and had the pros and cons of trial been fully explained to him, he would

have accepted the prosecution's plea offer, and that such an offer was never

clearly communicated to him by defense counsel Del Toro. (Docket No. 1-1 at 2).

Petitioner learned for the first time during jury selection that the prosecution

would seek to present the testimony of an armored car officer identifying him as

having participated in the March 6 armed robbery.  Petitioner then asked that co-

defendant Medina testify that petitioner was not involved in that robbery. The

court later considered a motion for severance and denied the same as untimely

and insufficiently detailed to merit severance.  Petitioner also argues that counsel

was defective in failing to present at trial the exculpatory testimony of the five FBI

---

[4]In a concurring opinion, two appellate judges concluded that the district
court committed no error in excluding the proffered testimony of the five FBI
agents.  United States v. Catalan-Roman, 585  F.3d at 475-79.

CIVIL 11-1212 (PG)                             8
(CRIMINAL 02-117 (PG))


agents to impeach the armored car officer's testimony.   Petitioner seeks an

evidentiary hearing to provide more details of counsel's professional failures and

consequential prejudice to him.

The United States filed a response in opposition to petitioner's motion on

May 5, 2011.   (Docket No. 10).  It argues that a 30-years to life plea offer was

never accepted by petitioner within the government imposed deadline, and was

in fact rejected. [5]  The government notes that the issue of the five FBI agents and

their testimony was considered and resolved by the court of appeals on direct

review and that petitioner cannot relitigate such matters.   The government

quotes the appellate decision noting that the evidence of guilt as to the March 27

robbery and murder was overwhelming and the inculpatory evidence would not

have been impeached through the testimonies of the FBI agents.   Furthermore,

impeachment of the guard's testimony by extrinsic evidence was allowed in

relation to two other witnesses, whose interviews with the guard differed from his

_____

[5]On November 14, 2003, status conference minutes reflect that there had
been informal plea offers.  (Criminal No. 02-117 (PG), Docket No. 169 at 2).
On October 28, 2004, the government announced that it was willing to enter
into plea negotiations and that the cut-off date was December 3, 2004.
(November 30, 2004 had been set by the court for any change of plea
notifications. (Criminal No. 02-117 (PG), Docket No. 224)). Trial was set at
January 24, 2005 on October 28, 2004. (Criminal No. 02-117 (PG), Docket No.
281).  On January 13, 2005, the government announced at a status conference
that the defendants would be going to trial. (Criminal No. 02-117 (PG), Docket
No. 306).

CIVIL 11-1212 (PG)                          9
(CRIMINAL 02-117 (PG))

accounts of the November 30 and March 6 incidents. United States v. Catalan-Roman, 585 F.3d at 470-71.   It concludes that petitioner is not entitled to an evidentiary hearing under the circumstances and that his petition lacks merit.

A reply to the response was filed on June 24, 2011. (Docket No. 7). Petitioner attacks the basis of the government's statement that he had knowledge of and rejected any plea offer.  He stresses that counsel misrepresented to him the consequences of going to trial, and he received no advice from counsel in relation to the decision-making process.  Petitioner also stresses his right to confront witnesses and counsel's failure to produce exculpatory evidence. He presents a charge of Brady violation because the prosecution failed to turn over exculpatory evidence, and that the trial court violated the Confrontation Clause when it denied his right to examine the FBI agents.

Petitioner appears pro se, and his  pleadings are considered more liberally, however inartfully or opaquely pleaded,  than those penned and filed by an attorney.  See Erickson v. Pardus, 551 U.S. 89, 94, 127 S. Ct. 2197 (2007); Proverb v. O'Mara, 2009 WL 368617 (D.N.H. Feb. 13, 2009).   Nevertheless, having reviewed the record, and having considered the pleadings of petitioner, as well as the arguments of the parties and for the reasons set forth below, I recommend that petitioner's motion to vacate, set aside, or correct sentence be DENIED without evidentiary hearing.

CIVIL 11-1212 (PG)                                    10
(CRIMINAL 02-117 (PG))

DISCUSSION

Under section 28 U.S.C. § 2255, a federal prisoner may move for post conviction relief if:

> the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack. . . .

28 U.S.C. § 2255; Hill v. United States, 368 U.S. 424, 426-27, 82 S.Ct. 468 (1962); David v. United States, 134 F.3d 470, 474 (1st Cir. 1998).

It is well settled that the Sixth Amendment right to counsel guarantees effective counsel. See Strickland v. Washington, 466 U.S. 668, 686-87, 104 S.Ct. 2052 (1984); United States v. Ortiz, 146 F.3d 25, 27 (1st Cir. 1998). Nevertheless, petitioner bears a "very heavy burden" in his attempt to have his sentence vacated premised on an ineffective assistance of counsel claim. See Argencourt v. United States, 78 F.3d 14, 16 (1st Cir. 1996); Lema v. United States, 987 F.2d 48, 51 (1st Cir. 1993). This is particularly true in this circuit where a lawyer's performance is deficient under Strickland ". . .only where, given the facts known at the time, counsel's choice was so patently unreasonable that no competent attorney would have made it." United States v. Rodriguez, 675 F.3d 48, 56 (1st Cir. 2012), quoting Tevlin v. Spencer, 621 F.3d 59, 66 (1st Cir. 2010), which in turn quotes Knight v. Spencer, 447 F.3d 6, 15 (1st Cir. 2006).

CIVIL 11-1212 (PG)                              11
(CRIMINAL 02-117 (PG))

The United States Supreme Court has developed a two-pronged test to determine whether a criminal defendant was denied his constitutionally guaranteed effective assistance of counsel.  See Strickland v. Washington, 466 U.S. at 687, 104 S.Ct. 2052.  Pursuant to the test established in Strickland, petitioner Catalan-Roman must first establish that his counsel in the criminal proceedings was deficient in that the quality of legal representation fell below an objective standard of reasonableness.  See id. at 688; Rosenthal v. O'Brien, 713 F.3d 676, 685 (1st Cir. 2013).   In order to satisfy the first-prong of the aforementioned test, petitioner  "must show that 'in light of all the circumstances, the identified acts or omissions [allegedly made by his trial attorney] were outside the wide range of professionally competent assistance.'"  Tejeda v. Dubois, 142 F.3d 18, 22 (1st Cir. 1998) (citing Strickland v. Washington, 466 U.S. at 690, 104 S.Ct. 2052). Petitioner must overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  Smullen v. United States, 94 F.3d 20,  23 (1st Cir. 1996) (citing Strickland v. Washington, 466 U.S. at 689, 104 S.Ct. 2052); see Vilches-Navarrete v. United States, 2012 WL 642435 at *3 (D.P.R. 2012).  Finally, a court must review counsel's actions deferentially, and should make every effort "to eliminate the distorting effects of hindsight." Argencourt v. United States, 78 F.3d at 16 (citing, Strickland v. Washington, 466

CIVIL 11-1212 (PG)                           12
(CRIMINAL 02-117 (PG))

U.S. at 689, 104 S.Ct. 2052); see also Burger v. Kemp, 483 U.S. 776, 789, 107 S.Ct. 3114 (1987).

   The second prong of the test, "[t]he 'prejudice' element of an ineffective assistance [of counsel] claim[,] also presents a high hurdle.  'An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment.'"  Argencourt v. United States, 78 F.3d at 16 (citing Strickland v. Washington, 466 U.S. at 691). Thus, petitioner must affirmatively "prove that there is a reasonable probability that, but for [his] counsel's errors, the result of the proceeding would have been different."  Knight v. United States, 37 F.3d 769, 774 (1st Cir. 1994) (citing Strickland v. Washington, 466 U.S. at 687).  That is, if petitioner succeeds in showing deficiencies in his legal representation, then he must conclusively establish that said deficiencies operated a real prejudice against him in the criminal proceedings.  See id. at 694.

   Petitioner bears the burden of proof for both elements of the Strickland test. See Cirilo-Muñoz v. United States, 404 F.3d 527, 530 (1st Cir. 2005) (citing Scarpa v. Dubois, 38 F.3d 1, 8-9 (1st Cir. 1994)).  There is no doubt that Strickland also applies to representation outside of the trial setting, which would include sentence and appeal.  See Hill v. Lockhart, 474 U.S. 52, 57, 106 S.Ct. 366 (1985); Bonneau v. United States, 961 F.2d 17, 20-22 (1st Cir. 1992); United States v. Tajeddini,

1  CIVIL 11-1212 (PG)                    13
2  (CRIMINAL 02-117 (PG))

3

4  945 F.2d 458, 468-69 (1st Cir. 1991), abrogated on other grounds by Roe v.

5  Flores-Ortega, 528 U.S. 470, 120 S.Ct. 1029 (2000).   The right to effective

6  assistance of counsel also applies to the plea bargaining process. See Missouri v.

7

8  Frye, 566 U.S. ___, 132 S.Ct. 1376, 1386-1387 (2012).  In Missouri v. Frye, 132

9  S.Ct. at 1408, the Supreme Court held that, as a general rule, defense counsel has

10 the duty to communicate formal offers from the prosecution to accept a plea on

11 terms and conditions that may be favorable to the accused.   If such a formal offer

12

13 was not communicated to a defendant, and the offer thus lapsed, then "…defense

14 counsel did not rendered the effective assistance that the Constitution requires."

15 Id.; see Lafler v. Cooper, 132 S.Ct. 1376, 1390-91 (2012).  "To show prejudice

16

17 from ineffective assistance of counsel where a plea offer has lapsed or been

18 rejected because of counsel's deficient performance, defendants must demonstrate

19 a reasonable probability they would have accepted the earlier plea offer had they

20 been afforded effective assistance of counsel.  Missouri v. Frye, 132 S.Ct. at 1409.

21
    The defendants must also demonstrate " . . a reasonable probability that the plea
22
23 would have been entered without the prosecution canceling it or the trial court

24 refusing to accept it . . ." Id.

25    Assuming  that counsels' representation fell below an objective standard of

26 reasonableness, petitioner would still have to prove that the representation

27
   resulted in prejudice to his case. See Owens v. United States, 483 F.3d 48, 63 (1st
28

CIVIL 11-1212 (PG)                          14
(CRIMINAL 02-117 (PG))

Cir. 2007) (quoting Strickland v. Washington, 466 U.S. at 687-88).  For our

purposes, it makes no difference in which order the Strickland test is applied.  See

Turner v. United States, 699 F.3d 578, 584 (1st Cir. 2012).

Within a habeas corpus case the decision to order an evidentiary hearing is

left up to the discretion of the court.  A court may deny an evidentiary hearing

when "(1) the motion is inadequate on its face, or (2) the movant's allegations,

even if true, do not entitle him to relief, or (3) the movant's allegations 'need not

be accepted as true because they state conclusions instead of facts, contradict the

record, or are 'inherently incredible.'"  David v. United States, 134 F.3d at 477

(quoting United States v. McGill, 11 F.3d 223, 225-26 (1st Cir. 1993)); Shraiar v.

United States, 736 F.2d 817, 818 (1st Cir. 1984)

Finally, collateral attack on nonconstitutional and nonjurisdictional "claims

are properly brought under section 2255 only if the claimed error is 'a fundamental

defect which inherently results in a complete miscarriage of justice' or 'an omission

inconsistent with the rudimentary demands of fair procedure.'"  Knight v. United

States, 37 F.3d at  772, quoting Hill v. United States, 368 U.S. at 428.

With these chiseled in granite principles in mind, I consider the three grounds

upon which petitioner relies to attack the legality of his conviction.

FIRST GROUND: UNKNOWN PLEA OFFER AND EXPOSURE

CIVIL 11-1212 (PG)                                    15
(CRIMINAL 02-117 (PG))

Petitioner argues that counsel did not inform him of the pros and cons of going to trial nor the exposure if found guilty.  Nor was he informed of a plea offer by the government.  "[T]he decision whether to plead guilty or contest a criminal charge is ordinarily the most important single decision in a criminal case...." United States v. Gordon, 156 F.3d 376, 380 (2d Cir. 1998, quoting Boria v. Keane, 99 F.3d 492, 496-97 (2d Cir. 1996), cited in Malpica-Garcia v. United States, 2009 WL 2512425 (D.P.R. 2009) at *3.  As the court noted therein, knowledge of sentencing exposures is crucial to the decision of whether to plead guilty. See United States v. Day, 969 F.2 39, 43 (3rd Cir. 1992), cited in Malpica-Garcia v. United States, supra; Malpica-Garcia v. United States, 2009 WL 1473906 (D.P.R. 2009) at *3.  It is difficult to fathom the claimed ignorance of petitioner in relation to his exposure, his lack of knowledge that he faced life imprisonment when compared to the obvious knowledge that he had that he was facing a possible death penalty.   At initial appearance, the penalties faced by defendants are routinely informed to them.   In this particular case, petitioner was represented by court-appointed counsel and learned counsel at no cost to him.  It is clear from the report and recommendation of then United States Magistrate Judge Aida Delgado-Colon that petitioner definitely knew on March 10, 2004 that he faced the death penalty if convicted after trial, not that he faced life imprisonment as the limit of punishment. Criminal No. 02-117 (PG), Docket No. 238 at 3).  After a year in the general

CIVIL 11-1212 (PG)                    16
(CRIMINAL 02-117 (PG))

population at the Metropolitan Detention Facility, and notwithstanding his good conduct except for a violation of safety regulations, petitioner was placed in the Special Housing Unit (SHU) because he faced the death penalty, a placing which was routine at the time for prisoners facing death.  (Criminal No. 02-117 (PG), Docket No. 238 at 5). United States v. Catalan-Roman, 329 F. Supp. 2d 240, 245-46 (D.P.R. 2004).   Furthermore, the letter sent to the United States by learned counsel Steve Potolsky reflects a meeting held between prosecutor and defense counsel on November 23, 2004 where the matter of plea was mentioned with an offer of 30 years to life on the table.  Petitioner's affidavit mentions that such an offer was never clearly communicated to him by defense counsel Del Toro while attorney Potolsky writes that ". . .we subsequently discussed the [plea offer] with our clients.[6]  It does not appear at this time as if a thirty to life plea is acceptable." (Docket No. 5-1 at 2).  In the reply brief, petitioner charges counsel Del Toro with

_____

[6]Petitioner's affidavit focuses strictly on counsel Del Toro whose native tongue is Spanish. The affidavit ignores that he was represented by learned counsel Potolsky completely.  It also ignores that counsel Del Toro is bilingual. Other than a generic, conclusory denial of knowledge of the pros and cons of going to trial after discussing plea with defense counsel, the affidavit says nothing and leaves out any mention of counsel Potolsky. The last sentence of the notice of filing affidavit further taxes credulity.  "Mr. Roman contends that had he known he was facing life imprisonment, he would have accepted the Government's plea offer."  (Docket No. 1-1).   The inescapable conclusion is that he discussed the plea offer.  Clearly had petitioner known he was facing the death penalty, he would have accepted the 30-year plea offer even more quickly.

CIVIL 11-1212 (PG)                           17
(CRIMINAL 02-117 (PG))

deficient performance in failing to advise him of the consequences he faced if he did not accept the plea offer of the prosecution and affirmatively misrepresenting the sentence he faced if he went to trial.  It taxes all concepts of credulity to think that petitioner did not know that he faced the death penalty as early as his initial appearance and at very least, as documented, during the March 10, 2004 evidentiary hearing before the magistrate judge, when coupled with counsel Potolsky's letter.[7] This was eight months before the deadlines placed on petitioner by the court and the government in relation to any announcement of a guilty plea. Petitioner's affidavit says nothing of action or inaction of counsel Potolsky's advice related to exposure and plea discussion, only that of counsel Del Toro.[8]  Finally, with knowledge of the exposure to the death penalty, petitioner was aware of the strength of the government's case: as the police arrived on the last scene, a Beretta pistol which had just been emptied into the victim was in petitioner's hand with his mortally wounded victim agonizing on the nearby pavement, riddled with

_____

[7]Petitioner attests that since he was and remains ignorant of the English language, he could not understand anything that took place in any pre-trial proceedings.  (Docket No. 1-1 at 2, ¶ 4). In absolute terms, this statement is incredible since there are no evidentiary hearings held in this court without court-certified interpreters providing their services to Spanish-speaking defendants who do not understand English.

[8]Counsel Steve M. Potolsky has been appointed learned counsel in the district court twenty-seven times in the last seventeen years.

CIVIL 11-1212 (PG)                              18
(CRIMINAL 02-117 (PG))

eight bullet wounds, three of them independently capable of proving fatal[9]. For practical purposes, petitioner was apprehended *in flagrante delicto*.

SECOND GROUND: TIMELY MOTION FOR SEVERANCE

Petitioner raises the issue of severance, the timeliness of the motion, and the lack of support for the same, both blamed on defense counsel.[10]  Petitioner notes that during jury selection, he learned the government would use the testimony of an armored car officer to prove his involvement in the March 6 attempted armed robbery.  Two and a half weeks later, on the threshold of the opening statements, the matter of exculpatory evidence was presented to the court, as well as a request to sever the death penalty defendants' trial so that co-defendant Medina could testify that petitioner had nothing to do with the March 6 attempt.  (Docket No. 1 at 6-7).  See United States v. Drougas, 748 F. 2d 8, 19 (1st Cir. 1984).  The retort of the government quotes extensively from the appellate court's decision but ultimately, the government notes that the matter has been litigated and settled on appeal.

_____

[9]This a bare-bones summary. The grotesque nature of the murder does not require repetition at this writing. See Criminal No. 02-117 (PG), Opinion Following Oral Order, May 19, 2005, Docket No. 506 at 3). United States v. Roman, 371 F. Supp. 2d at 40.

[10]A previous motion to empanel dual juries (severance) had been denied by the court based on other grounds. United States v. Catalan-Roman, 354 F. Supp. 2d 104 (D.P.R. 2005).

CIVIL 11-1212 (PG)                              19
(CRIMINAL 02-117 (PG))

The basis for denial of the motion for severance were given by the trial court. (Criminal No. 02-117 (PG), Opinion and Order, June 7, 2005, Docket No. 522). United States v. Catalan-Roman, 376 F. Supp. 2d 96 (D.P.R. 2005).   The court of appeals noted that there was no manifest abuse of discretion in the district court's denial of the motion.  United States v. Catalan-Roman, 585 F.3d at 462; see United States v. Fernandez-Hernandez, 652 F.3d. 56, 75 (1st Cir. 2011).

Clearly, when a federal prisoner raises a claim that has been decided on direct review, he ordinarily cannot attempt to relitigate the claim in a section 2255 motion.  Withrow v. Williams, 507 U.S. 680, 720-21, 113 S.Ct. 1745 (1993); Berthoff v. United States, 308 F.3d 124, 127-28 (1st Cir. 2002); Argencourt v. United States, 78 F.3d at 16 n.1; Singleton v. United States, 26 F.3d at 240.  It would be at least awkward and  at best improvident for the district court to revisit on collateral review a matter thoroughly considered and decided by the court of appeals.   The reasoning of the court of appeals belies the existence of grounds for relief.  That is, even assuming that counsel's performance was deficient, and that is not my assumption, the prejudice prong of Strickland would remain lacking.

THIRD GROUND: CONFRONTATION AND
DUE PROCESS CLAUSE VIOLATIONS

CIVIL 11-1212 (PG)                         20
(CRIMINAL 02-117 (PG))

        In his reply brief, petitioner squarely addresses a <u>Brady</u> violation alluded to

by the appellate court and stresses that such a violation, caused by his attorney's

inadequacy, resulted in an unfair trial.  He notes that if allowed to present the

testimony of the FBI agents to contradict the Ranger American guard, the

exculpatory evidence would have been especially important to the district court's

analysis because the focus of the prosecution's case was the March 27 murder and

robbery. (Docket No. 7 at 7).  Petitioner accuses the court of violating the

Confrontation Clause, and the prosecution of violating <u>Brady</u>.  In <u>Brady v.

Maryland</u>, 373 U.S. 83, 83 S.Ct. 1194 (1963), the Supreme Court held that,

irrespective of good or bad faith, suppression by the prosecution of evidence

favorable to a defendant who has requested it violates due process where such

evidence is material to either guilt or punishment.  <u>Brady</u> imposes an affirmative

duty on the prosecution to produce at the appropriate time requested evidence

that is materially favorable to the accused, either as direct or impeaching evidence.

> "We do not ... automatically require a new trial whenever
> 'a combing of the prosecutors' files after the trial has
> disclosed evidence possibly useful to the defense but not
> likely to have changed the verdict. . ..'" <u>*Giglio v. United
> States*</u>, 405 U.S. 150,  154, 92 S.Ct. 763, 31 L.Ed.2d 104
> (1972) (quoting <u>United States v.  Keogh</u>, 391 F.2d 138,
> 148 (2d Cir.1968)). [Instead,] "[a] finding of materiality
> of the evidence is required under *Brady*." <u>*Id.*</u>

CIVIL 11-1212 (PG)                    21
(CRIMINAL 02-117 (PG))

>In *United States v. Bagley*, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985), the Court elaborated a test for determining when undisclosed evidence is material for purposes of a *Brady* inquiry.  "The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."  *Id.* at 682, 105 S.Ct. 3375 (opinion of Blackmun, J.); *id.* at 685, 105 S.Ct. 3375 (White, J., concurring in part and concurring in judgment); *see also Kyles*, 514 U.S. at 433-435, 115 S.Ct. 1555 (endorsing *Bagley* test as the proper measure of materiality).  This does not mean that a defendant must convince the court of the certainty of a different outcome.  Instead, one proves a *Brady* violation "by showing that the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Kyles*, 514 U.S. at 435, 115 S.Ct. 1555.

United States v. Cunan, 152 F.3d 29, 34 (1st Cir. 1998).

The court of appeals reviewed the issue of exculpatory testimony through the focal lenses of the Confrontation and Due Process clauses and noted that extrinsic evidence for purposes of impeachment was introduced in any event, although not through the five witnesses that petitioner belatedly requested at trial.  United States v. Catalan-Roman, 585 F.3d at 464.[11]  Regardless of whether exculpatory evidence was withheld deliberately or accidentally, considering the nature of Medina's expected testimony, the impeachable character of such

_____

[11]The guard's credibility was impeached by extrinsic evidence of inconsistent statements through the testimony of a Ranger American security investigator, as well as through the testimony of another government agent, Rios-Calzada.

CIVIL 11-1212 (PG)                    22
(CRIMINAL 02-117 (PG))

testimony, its motivated source, and the two substitute testimonies which contradicted the guard's testimony, the outcome of the case has not been undermined at any level of constitutional consequence. See id.   The *post hoc* Brady claim was not considered as such by the court of appeals, but may be considered here and rejected as lacking in merit.   Co-defendant Medina's testimony would have been contradictory and exculpatory but factors such as motive when considered with the crimes with which he was charged clearly add strength to the district court's decision to find little merit in the motion for severance.   Petitioner charges that the appellate panel implies that counsel's performance was ineffective, before and during trial, and that this affected petitioner adversely. See e.g. United States v. Catalan-Roman, 585 F.3d at 461, n.7.   An equally valid and alternative implication is that the  testimony of petitioner's co-defendant Medina, who was the first defendant to shoot the murder victim, would elicit an unfavorable result for the defense, considering that the court reasonably had determined that the same aggravating factors would be heard as to both petitioner and co-defendant Medina.  (Criminal No. 02-117 (PG), Docket No. 305 at 3).   United States v. Catalan-Roman, 354 F. Supp. 2d at 106.[12]   While the testimony of the FBI agents might have aided the defense in

_____

[12]In denying petitioner's motion to admit a polygraph's results, the court mentioned that to allow the proffered evidence of the lack of petitioner's participation in the attempted robbery, but not to allow evidence of other

CIVIL 11-1212 (PG)                                   23
(CRIMINAL 02-117 (PG))

showing contradictions in the guard's testimony, such testimony was impeached through extrinsic evidence of another sort.  United States v. Catalan-Roman, 585 F.3d at 464.  Ultimately, however, the subject matter of this issue has been considered and resolved on direct appeal, thus precluding this court's consideration of the argument.  And unlike the classic Brady challenge, this material was known during the trial process.  The district court made studied findings and the court of appeals placed its *imprimatur* on the district court's decision.  United States v. Catalan-Roman, 585 F.3d at   470-71.

CONCLUSION

Petitioner has failed to establish that his attorneys in the criminal proceedings were ineffective in that the quality of their legal representations fell below an objective standard of reasonableness.  Strickland v. Washington, 466 U.S. at 686-87, 104 S.Ct. 2052; United States  v. Downs-Moses, 329 F.3d 253, 265 (1st Cir. 2003).   The case produced seven published opinions at the district court level, five of which are cited above, and a lengthy appellate court decision reflecting the complexity of the pretrial process and trial.  The defense attorneys

---

uncharged crimes where petitioner is implicated through the confession of co-defendant Quester Sterling's confession, would unfairly mislead the jury. (Criminal No. 02-117 (PG), Opinion and Order dated April 27, 2005, Docket No. 482 at 8). United States v. Catalan-Roman, 368 F. Supp. 2d 119, 124  (D.P.R. 2005).

CIVIL 11-1212 (PG)                    24
(CRIMINAL 02-117 (PG))

provided a formidable and incessant barrage of cogent motions to the district court in defense of petitioner.  Assuming that petitioner were to have succeeded in showing deficiencies in this barrage, then he must establish that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  See United States v. Rodriguez, 675 F.3d 48, 56-57 (1st Cir. 2012).   The Strickland standard was clearly not transgressed by counsels' performances. Finally, "[u]nder Strickland v. Washington, . . . counsel is not incompetent merely because he may not be perfect.  In real life, there is room not only for differences in judgment but even for mistakes, which are almost inevitable in a trial setting, so long as their quality or quantity do not mark out counsel as incompetent." Arroyo v. United States, 195 F.3d 54, 55 (1st Cir. 1999).  Petitioner has not satisfied the first prong of Strickland, and has not demonstrated that the wide range of reasonable professional assistance was substantially narrowed to his detriment.  See Knight v. Spencer, 447 F.3d at 15.

Petitioner is required to make a substantial threshold showing that he is entitled to an evidentiary hearing.  Wade v. United States, 504 U.S. 181, 186, 112 S.Ct. 1840 (1992); United States v. Romsey, 975 F.2d 556, 557-58 (8th Cir. 1992).

CIVIL 11-1212 (PG)                              25
(CRIMINAL 02-117 (PG))

> [E]videntiary hearings on motions are the exception, not
> the rule.  We have repeatedly stated that, even in the
> criminal context, a defendant is not entitled as of right to
> an evidentiary hearing on a pretrial or posttrial motion.
> Thus, a party seeking an evidentiary hearing must carry
> a fairly heavy burden of demonstrating a need for special
> treatment.

United States v. Isom, 85 F.3d 831, 838 (1st Cir. 1996) (quoting United States v. McGill, 11 F.3d 223, 225 (1st Cir. 1993))

Petitioner has presented conclusory and internally inconsistent statements to support his request for an evidentiary hearing.  Apart from such submissions, the remaining issues which he raises have been sufficiently settled on direct appeal, thus precluding review on collateral attack.  The procedural history of this case and the totality of the circumstances do not result in the conclusion that petitioner has suffered a miscarriage of justice, and consequently do not invite the court to issue the extraordinary writ.

Accordingly, it is my recommendation that the section 2255 motion be denied in its entirety without an evidentiary hearing. See Rivera-Perez v. United States, 508 F. Supp. 2d 150, 163 (D.P.R. 2007); Reyes v. United States, 421 F. Supp. 2d 426, 429-30 (D.P.R. 2006).

Under the provisions of Rule 72(d), Local Rules, District of Puerto Rico, any party who objects to this report and recommendation must file a written objection

CIVIL 11-1212 (PG)                    26
(CRIMINAL 02-117 (PG))

thereto with the Clerk of this Court within fourteen (14) days of the party's receipt of this report and recommendation.  The written objections must specifically identify the portion of the recommendation, or report to which objection is made and the basis for such objections.  Failure to comply with this rule precludes further appellate review.  See Thomas v. Arn, 474 U.S. 140, 155 (1985); Davet v. Maccorone, 973 F.2d 22, 30-31 (1st Cir. 1992); Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985 (1st Cir. 1988); Borden v. Sec'y of Health & Human Servs., 836 F.2d 4, 6 (1st Cir. 1987); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603 (1st Cir. 1980); Velazquez v. Abbott Laboratories, 901 F.Supp. 2d 279, 288 (D.P.R. 2012).

At San Juan, Puerto Rico, this 24th day of October, 2013.


S/ JUSTO ARENAS
United States Magistrate Judge

CIVIL 11-1212 (PG)                     27
(CRIMINAL 02-117 (PG))